UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _06/23/2025__
```

-----------------------------------------------------------------------X
                                 :

GREYHAWK HAWTHORNE LENDER, LLC,       :

                      Plaintiff,         :

                               :           25-cv-2709 (LJL)

      -v-                       :

                               :      OPINION AND ORDER

ZACHARY A. VELLA,                  :

                    Defendant.     :

                               :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Greyhawk Hawthorne Lender, LLC[1] ("Plaintiff" or "Greyhawk") moves, pursuant to 28 U.S.C. §§ 1447(c), 1334(c), and 1452(b), to remand this case to New York State Supreme Court, New York County. Dkt. No. 5. Defendant Zachary A. Vella ("Defendant" or "Vella") moves, pursuant to 28 U.S.C. § 1412, for an order transferring the case to the United States District Court for the Central District of California. Dkt. No. 4.

For the following reasons, Plaintiff's motion to remand is granted and Defendant's motion to transfer is denied.

## BACKGROUND

The following facts are drawn from the Notice of Removal and the documents attached thereto. *See* Dkt. No. 1.[2]

---

[1] The case caption in the Court's electronic filing system erroneously reflects Plaintiff's name as "Greyhawk Hathorne Lender, LLC."

[2] As discussed below, Defendant filed an Amended Notice of Removal on April 28, 2025. Dkt. No. 12. The Amended Notice of Removal contains the same underlying facts as the original Notice of Removal, adding only statements relevant to timeliness and jurisdiction. *See id.* ¶¶ 17–29.

## I.    The Loan

Greyhawk is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Laguna Beach, California.  Dkt. No. 1 ("Notice of Removal" or "NOR") ¶ 1.  Defendant is a natural person with a principal residence in Florida. *Id.* ¶ 2.

Nonparties 13007 Yukon Avenue, Hawthorne LLC, 13100 Yukon Avenue, Hawthorne LLC, 12536 Chadron Avenue Hawthorne, LLC, and 13040 Cerise ZAV (collectively, "Borrowers") are limited liability companies organized under the laws of the State of Delaware. *Id.* ¶¶ 3–6.[3]  Each is the owner of a parcel of real property and improvements at an address in California corresponding to the name of the LLC.  *Id.*  Defendant is the sole member and manager of each of the Borrowers.  *Id.* ¶ 2.

On or about August 31, 2021, the Borrowers entered into a Loan Agreement (the "Loan Agreement") with an entity named Hawthorne Portfolio Lender LLC (the "Original Lender") to borrow up to $79,055,700 (the "Loan").  *Id.* ¶ 22.  In connection with the Loan transaction, Vella executed in his personal capacity a Guaranty of Recourse Obligations (the "Guaranty").  *Id.* ¶ 25; Dkt. No. 1-8.  The Original Lender's rights under and interest in the Loan and Guaranty were subsequently assigned to Madison Realty Capital Debt MA II Holdings B LLC ("Madison Lender").  NOR ¶ 27.

On October 3, 2023, Borrowers and Madison Lender entered into a Forbearance Agreement.  *Id.* ¶ 29.  The parties agreed to increase the Loan amount to $45,204,499.81 by

---

[3] Loan documents also show 1010 ZV Sandhill Avenue, LLC, as a borrower.  Dkt. Nos. 1-4, 1-5, 1-8.  The Notice of Removal does not explain the relationship of 1010 ZV Sandhill Avenue, LLC to these proceedings.

capitalizing accrued and unpaid interest due under the Loan and to increase the interest rate under the Loan. *Id.*

Effective December 23, 2024, Madison Lender's rights under and interest in the Loan and Guaranty were assigned to Greyhawk. *Id.* ¶ 33.

Borrowers failed to make all interest payments due under the Loan. *Id.* ¶ 34. Accordingly, on or about January 21, 2025, Greyhawk served Borrowers a Notice of Sale recorded in the Official Records of the County of Los Angeles, scheduling a sale of the properties securing the Loan. *Id.* ¶ 35. The sale was scheduled for February 5, 2025. *Id.* ¶ 35. The Notice of Sale states that the total amount due under the Loan was $47,558,932.40. *Id.*

## II.    The Bankruptcy Filing and State Court Action

On January 27, 2025, Greyhawk commenced this action against Defendant by filing a summons and motion for summary judgment in lieu of complaint pursuant to CPLR 3213 in the Supreme Court of the State of New York, New York County. *Id.* ¶ 10. Greyhawk seeks damages against Defendant in his capacity as Guarantor of the Loan. *Id.* ¶ 11. The motion was returnable on March 28, 2025. *Id.* ¶ 12.

On or about February 4, 2025, the day before the scheduled foreclosure sale, each of the Borrowers filed a petition for bankruptcy in the United States Bankruptcy Court for the Central District of California. *Id.* ¶¶ 3–7; *see In re: 13007 Yukon Ave., Hawthorne, LLC* ("*Bankruptcy Proceeding*"), 2:25-bk-10880-BR (Bankr. C.D. Cal.). The bankruptcy cases are being jointly administered. *See* Dkt. No. 14, *Bankruptcy Proceeding*; NOR ¶ 7.

On February 6, 2025, Plaintiff filed an amended notice of motion, also pursuant to CPLR 3213, returnable on April 11, 2025. NOR ¶ 12. The memorandum of law in support of Plaintiff's supplemental motion notes that although the Loan was already recourse as to both Borrower and Defendant, Borrower's bankruptcy filing on February 4, 2025, "constitutes a

separate full recourse event . . . because each of the properties securing the Loan have now become assets of voluntary bankruptcy proceedings." Dkt. No. 1-28 at 2.  Plaintiff seeks a judgment against Defendant in the amount of $46,851,027.30 plus accrued interest from December 20, 2024, through the date of judgment and contractual interest running from March 1, 2024, through the date of judgment.  *Id.* ¶ 13.

On March 30, 2025, the Borrowers and Defendant filed an adversary complaint in the bankruptcy case seeking, among other relief, a declaratory judgment with respect to amounts due under the Loan and under the Guaranty.  *Id.* ¶ 14; Dkt. No. 1-35; *see 13007 Yukon Ave., Hawthorne LLC et al. v. Greyhawk Hawthorne Lender LLC* ("*Adversary Proceeding*"), 2:25-ap-01066-BR (Bankr. C.D. Cal.).  The adversary complaint alleges that the Loan is usurious under California law, Dkt. No. 1-35 ¶ 28, and that Borrowers are entitled to declaratory judgment regarding Vella's obligations to Greyhawk because Vella will have a claim against Borrowers for "indemnification, contribution, or reimbursement" of any money he pays to Greyhawk, *id.* ¶ 41.  The adversary complaint also seeks an injunction preventing Greyhawk from prosecuting this litigation.  *Id.* ¶ 48.  Greyhawk has moved to dismiss the adversary complaint based in part on the fact that the Borrowers already raised the usury defense in California state court when seeking an injunction against Greyhawk's attempt to foreclose on the properties, and the California court denied the injunction on February 3, 2025, finding a "lack of usury."  Dkt. No. 19-1 at 4–5; *see* Dkt. No. 8 at 272, *Adversary Proceeding*.  Greyhawk accordingly argues that the Borrowers' claims in the adversary proceeding are barred by res judicata and/or the *Rooker-Feldman* doctrine, and that Vella's claims are barred by res judicata and/or mandatory abstention in favor of this proceeding.  *See* Dkt. No. 1-35.

### III.    The Guaranty

The Guaranty is a guaranty of payment and not of collection.  Defendant, as guarantor, "irrevocably and unconditionally guarantees to Lender the prompt and unconditional payment and performance of the Guaranteed Obligations . . . as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise."  Dkt. No. 1-8 ("Guaranty") § 1.1.  In addition, Guarantor also "irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor."  Guaranty § 1.1.  The "Guaranteed Obligations" are defined to mean "all obligations and liabilities of Borrower for which Borrower shall be personally liable" pursuant to the Loan Agreement.  *Id.*

The Guaranty further recites that "[i]t is expressly understood and agreed that this is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Loan Agreement, the Security Instrument, or the other Loan documents."  Guaranty § 1.2.

The rights of the Lender under the Guaranty are extensive.  Among other things, Guarantor agrees "that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired (a) by reason of the assertion by Lender of any rights or remedies which it may have under or with respect to either the Note, the Loan Agreement, the Security Instrument, or the other Loan Documents, against any person obligated thereunder or against the owner" of the property securing the Loan, "or [] by reason of the commencement of a case under the Bankruptcy Code, the insolvency of, or voluntary or involuntary bankruptcy . . . by or against any person obligated under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, or the death of any Guarantor."  *Id.* § 1.7.  The Guaranty also provides that if the Borrowers "shall have taken

advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect

of which is to prevent or delay Lender from taking any remedial action against

Borrower, . . . Lender may, as against Guarantor, nevertheless, declare the Debt due and payable

and enforce any or all of its rights and remedies against Guarantor provided for herein." *Id.*

Section 1.9 further provides that the rights and remedies that the Lender has against the

Guarantor are independent of the rights and remedies that it has against the Borrowers.  It

provides:

> This is a guaranty of payment and not of collection and upon the occurrence and
> during the continuance of an Event of Default under the Note, the Loan Agreement,
> the Security Instrument or the other Loan Documents, Lender may, at its option,
> proceed directly and at once, without notice, against Guarantor to collect and
> recover the full amount of the liability hereunder or any portion thereof, without
> proceeding against Borrower or any other person, or foreclosing upon, selling, or
> otherwise disposing of or collecting or applying against any of the mortgaged
> property or other collateral for the Loan.

*Id.* § 1.9.

Section 5.2(c)(xxiv) of the Guaranty provides, in pertinent part, that the Guarantor

"freely, unconditionally, expressly and knowingly" waives "any defense based upon any statute

or rule of law which provides that the obligation of a surety must be neither larger in amount nor

in any other respects more burdensome than that of a principal." *Id.* § 5.2(c)(xxiv)(h); *see also*

*Barton Hall, LLC v. AFIAA 158 West 27th St., LLC*, 198 N.Y.S.3d 355, 355 (1st Dep't 2023)

(holding guarantor's liability can be greater than that of the obligor "where there has been a

waiver of defenses" in the guaranty).  Under Section 5.2(c)(xvi), Guarantor also "freely,

irrevocably, unconditionally, expressly and knowingly . . . [w]aives all rights of subrogation,

indemnity, any rights to collect reimbursement from Borrower and any right to enforce any

remedy that Lender now has, or may have, against Borrower."  Guaranty § 5.2(c)(xvi).

The Guaranty has a choice of forum clause.  Section 4.9(b) of the Guaranty provides, in pertinent part:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY, AT LENDER'S OPTION, BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO TITLE 14 SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

*Id.* § 4.9(b).

The Guaranty also has a New York choice of law provision.  *Id.* § 4.9(a).

## PROCEDURAL HISTORY

On April 1, 2025, the day after filing the adversary complaint in Bankruptcy Court, Vella filed a notice of removal, removing the state court case to this Court pursuant to 28 U.S.C. §§ 1334(b), 1441, 1452(a), and 1446.  Dkt. No. 1.

On April 23, 2025, Vella filed a motion to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1412.  Dkt. No. 4.  Greyhawk filed a memorandum of law in opposition to that motion on May 5, 2025.  Dkt. No. 16.

On April 23, 2025, the same day Vella filed his motion to transfer, Greyhawk filed its motion to remand.  Dkt. No. 5.  Greyhawk also filed a memorandum of law in support of the motion and declarations of David I. Zahlman and Matthew G. Bouslog.  Dkt. Nos. 6–8.

Vella filed an amended notice of removal on April 28, 2025, with three exhibits.  Dkt. No. 12.[4]  In response, the Court issued an order directing Plaintiff to submit a supplemental letter

---

[4] Defendant's Amended Notice of Removal adds additional bases for timeliness and jurisdiction.

brief in support of remand by May 6, 2025, extending Defendant's time to respond to May 12, 2025, and setting the date for Plaintiff's reply as May 19, 2025.  Dkt. No. 15.  On May 6, 2025, Plaintiff filed a supplemental letter brief in further support of its motion to remand.  Dkt. No. 17. Defendant filed a memorandum of law in opposition to the motion to remand on May 12, 2025, along with a declaration of counsel.  Dkt. Nos. 18–19.  On May 19, 2025, Greyhawk filed a reply memorandum in further support of the motion to remand.  Dkt. No. 21.

## DISCUSSION

The Court first considers Greyhawk's motion to remand.  *See Stahl v. Stahl*, 2003 WL 22595288, at *2 (S.D.N.Y. Nov. 7, 2003).  Because remand is required, the Court need not consider Defendant's motion to transfer.

Section 1447(c) of Title 28 authorizes federal courts to remand a case "on the basis of any defect in removal procedure" or because "the district court lacks subject matter jurisdiction." *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir. 1994).  "'In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).  "On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." *Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994).

---

Dkt. No. 12.  Plaintiff has not challenged Defendant's use of an Amended Notice of Removal, instead choosing to meet Defendant's arguments on the merits. *See generally Beter v. Baughman*, 2024 WL 1333570, at *4 (S.D.N.Y. Mar. 13, 2024) (discussing permissible amendments to a notice of removal), *report and recommendation adopted*, 2024 WL 1329066 (S.D.N.Y. Mar. 28, 2024).

Greyhawk argues that Vella's removal was untimely under 28 U.S.C. § 1446(b)(1) and that this Court lacks jurisdiction over Vella's claim under 28 U.S.C. § 1334(b).  Dkt. Nos. 6, 21.  It emphasizes that the state court proceeding is not a "core proceeding" arising under Title 11 or in a case under Title 11, meaning that even if the Court has "related to" jurisdiction under 28 U.S.C. § 1334(b), the forum selection clause in the Guaranty bars removal and the Court should abstain from hearing the case under 28 U.S.C. § 1334(c)(1).  Dkt. Nos. 6, 21.  Vella argues that removal was timely, the forum selection clause is inapplicable and abstention is inappropriate because this case is a "core proceeding," and moreover that this Court has "related to" jurisdiction under 28 U.S.C. § 1334(b).  Dkt. No. 18.

The Court holds that Vella's removal was timely, but this case is plainly not a core proceeding.  This case is not even "related to" the bankruptcy proceeding, and the Court therefore lacks jurisdiction under 28 U.S.C. § 1334(b).  Moreover, even if the Court had "related to" jurisdiction, remand would be appropriate due to the forum selection clause and mandatory or permissive abstention.  The mere fact that Vella has filed an adversary complaint in the bankruptcy court does not give him a free pass to avoid all applicable limitations on removal.

## I.    Timeliness of Removal

Plaintiff argues that removal of this case was untimely under Section 1446(b) of Title 28.  Dkt. No. 6 at 9–11.  Defendant argues that removal was nevertheless timely under Federal Rule of Bankruptcy Procedure 9027 ("Rule 9027").  Dkt. No. 12 ¶¶ 22, 25.  The Court is therefore presented with the issue whether the timeliness of removal of a state court case to federal court under 28 U.S.C. § 1452(a) is governed by 28 U.S.C. § 1446 or Rule 9027.  *Compare In re Pacor, Inc.*, 72 B.R. 927, 928–29 (Bankr. E.D. Pa.), *aff'd*, 86 B.R. 808 (E.D. Pa. 1987), *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 755–56 (D.N.J. 1996), *Textron Inv. Mgmt. Co. v. Struthers Thermo-Flood Corp.*, 169 B.R. 206, 209 (D. Kan. 1994) (holding that

Rule 9027 governs), *with State Bank of Lombard v. Chart House Inc.*, 46 B.R. 468, 472–73 (N.D. Ill.1985) (holding that 28 U.S.C. § 1446 governs).  The Court holds that Rule 9027 governs the timeliness of removal under 28 U.S.C. § 1452.

Removal would be untimely under 28 U.S.C. § 1446.  Section 1446(b)(1) provides that the notice of removal of a civil action or proceeding must be filed "within 30 days of the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is earlier."  28 U.S.C. § 1446(b)(1).  Section 1446(b)(3) provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  This case was commenced on January 27, 2025, by the filing of a summons and motion for summary judgment in lieu of complaint pursuant to CPLR 3213 in the Supreme Court of the State of New York, New York County.  NOR ¶ 10; Dkt. No. 1-1.  Defendant was served with the summons, notice of motion, supplemental affirmation, and a supplemental memorandum of law in support of Greyhawk's motion for summary judgment in lieu of complaint on February 12 and 13, 2025.  Dkt. No. 1-29, 1-30, 1-31.  The supplemental memorandum of law refers explicitly to the filing by the Borrower for voluntary bankruptcy protection on February 4, 2025, asserting that it constitutes an event that triggered the Loan becoming fully recourse to both Borrower and Guarantor.  Dkt. No. 1-28 at 6.  The notice of

removal was filed on April 1, 2025.  Defendant was on notice of the grounds for removal by February 4, 2025, at the latest, and did not file for removal for over 50 days.

Defendant does not contest that removal is untimely if measured by the standard of 28 U.S.C. § 1446(b).  Dkt. No. 18 at 6–8.  Defendant's original and amended Notices of Removal assert that removal was timely under 28 U.S.C. § 1446(b)(3) because the original Notice of Removal was made within 30 days of receipt of the Bankruptcy Complaint.  Dkt. No. 1 ¶ 17; Dkt. No. 12 ¶ 21.  However, after Plaintiff's opening memorandum of law argued that removal was not timely under Section 1446(b)(3), Dkt. No. 6 at 9–11, Defendant did not contest the point, instead arguing that the deadline governing removal "is the ninety days allowed in Fed. R. Bankr. P. 9027(a)(2), not the thirty days allowed in 28 U.S.C. § 1446(b) incorrectly alleged by Greyhawk," Dkt. No. 18 at 6–8.  The argument that removal was timely under Section 1446 is deemed abandoned.  *See Anti-Monopoly, Inc. v. Hasbro, Inc*., 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

In any case, Plaintiff is correct that Defendant's filing of an adversary complaint in the bankruptcy court would not restart Defendant's time for removal under 28 U.S.C. § 1446.  As a general matter, the pleadings, motions, orders and other papers to which Section 1446(b)(3) refers are papers "generated in or arising out of the state court action that is the subject of the defendant's removal petition."  *Lucerne Cap.Mgmt., LP v. Arch Ins. Co.*, 2023 WL 8117847, at *4 (D. Conn. Nov. 22, 2023) (quoting *Connecticut v. McGraw Hill Cos., Inc.*, 2013 WL 1759864, at *3 (D. Conn. Apr. 24, 2013); *see also Essenmacher v. Keene Carriers, Inc.*, 702 F. Supp.3d 160, 166 (W.D.N.Y. 2023); *Suttlehan v. MidFirst Bank*, 205 F. Supp. 3d 366, 371 (S.D.N.Y. 2016).  Additionally, under Section 1446 "[a] state court case that initially is non-

removable cannot subsequently become removable or be transformed into a removable case unless a change occurs that makes it removable as a result of the plaintiff's voluntary act." *Vill. of Chestnut Ridge v. Town of Ramapo*, 2008 WL 4525753, at *6 (S.D.N.Y. Sept. 30, 2008) (quoting *Henderson v. City of Chattanooga*, 2002 WL 32060139, at *5 (E.D. Tenn. Mar. 15, 2002)).  Here, the relevant paper in the state court action was the supplemental memorandum of law served on February 4, 2025, which explicitly put Defendant on notice of the connection between the state court action and the bankruptcy proceeding.  Dkt. No. 1-28 at 2.  Defendant was required to file a notice of removal within 30 days of receipt of that paper, and the clock did not restart on the filing of the bankruptcy complaint or any other later paper.  Even assuming the bankruptcy complaint was the type of "other paper" that could put the defendant on notice, the removal clock runs from the paper from which it "*may first be ascertained* that the case is one which is or has become removable," not some later paper.  *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014) (emphasis added) (quoting 28 U.S.C. § 1446(b)(3)).  Defendant cannot manufacture a basis and timetable for removal by filing a complaint in a distinct legal proceeding after the removal clock has already run.

However, Defendant argues that removal was timely under Federal Rule of Bankruptcy Procedure 9027 ("Rule 9027") because it was brought within 90 days of the Borrowers' filing of a petition for relief under the Bankruptcy Code on February 4, 2025.  Dkt. No. 12 ¶¶ 22, 25.  Defendant's argument is convincing.

Rule 9027(a)(2) provides:

> If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (c) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

12

Fed. R. Bankr. P. 9027(a)(2).

Plaintiff's state court lawsuit was filed on January 27, 2025, and therefore was pending when the Borrowers' case under chapter 11 of the Code was commenced on February 4, 2025. Dkt. No. 12 ¶¶ 10, 23. Under chapter 11, the "commencement of a voluntary case . . . constitutes an order for relief." 11 U.S.C. § 301(b). Under Rule 9027(a)(2), then, Defendant had 90 days from the February 4, 2025, filing of the chapter 11 case to remove Plaintiff's pending state court lawsuit. The Notice of Removal filed on April 1, 2025, and the Amended Notice of Removal filed on April 28, 2025, fall within the 90 days permitted under Rule 9027(a)(2).

There is a division of authority regarding whether the 90-day time period under Rule 9027 or the 30-day time period under Section 1446(b) applies when removal is made to the district court under Section 1452(a) of Title 28. Some courts have held that the timing of removal under Section 1452(a) is governed by Section 1446, preempting Rule 9027 to the extent it is inconsistent. *See In re Asbestos Litig.*, 2002 WL 649400, at *3 (D. Or. Feb. 1, 2002) ("When a statute and a rule directly conflict, the statute wins."). Others have held that Rule 9027 does not apply when removal under Section 1452(a) is made to the district court rather than directly to the bankruptcy court. *See Transoceanic Shipping Co., Inc. v. Rapid Mat, US, LLC*, 2006 WL 3412266, at *2 (E.D. La. Nov. 26, 2006). But the majority of courts have held that the requirements of Section 1446(b) are not properly understood to preempt Rule 9027, and that the Rule properly governs removals under Section 1452. *See Madar v. Johnson & Johnson*, 2019 WL 2723463, at *4 (N.D.N.Y. July 1, 2019) ("[T]he deadline is the ninety days allowed in Fed. R. Bankr. P. 9027(a)(2), not the thirty days allowed in 28 U.S.C. § 1446(b)."); *Gilbert v. AGCO Corp.*, 2009 WL 3672071, at *1 (N.D.N.Y. Oct. 30, 2009) ("[R]emovals pursuant to § 1452

continue to be covered by the times set forth in Bankruptcy Rule 9027."); *Sonnier v. HESCO Bastion USA, LLC*, 2013 WL 5350853, at *5 (M.D. La. Sept. 23, 2013) (collecting cases).

Rule 9027 is clearly intended to set out a bankruptcy removal procedure which differs from 28 U.S.C. § 1446 because of "unique concerns and policies embodied in the Bankruptcy Code." *In re Pacor, Inc.*, 72 B.R. 927, 930 (Bankr. E.D. Pa.), *aff'd*, 86 B.R. 808 (E.D. Pa. 1987). Rule 9027 mirrors 28 U.S.C. § 1446 in many respects, including by setting out a 30-day time for removal if a related claim or cause of action is asserted in another court while the bankruptcy case is pending. Fed. R. Bankr. P. 9027(a)(3); *see* Fed. R. Bankr. P. 9027 advisory committee note ("The subdivisions of this rule conform substantially to 28 U.S.C. §§ 1446–1450 and Rule 81(a) F. R. Civ. P. pertaining to removal to the district courts."). However, Rule 9027 differs from 28 U.S.C. § 1446 in how it treats claims pending when a bankruptcy case is commenced. Fed. R. Bankr. P. 9027(a)(2). Such claims may be removed not only within "90 days after the order for relief," but also within 30 days of an order terminating a bankruptcy stay of the state court action or, in a chapter 11 case, within 30 days after a trustee qualifies. *See* Fed. R. Bankr. P. 9027(a)(2)(A)–(C). These provisions are designed to address issues which exist only in bankruptcy removals, such as the fact that removal may "be of little utility in such cases because the pending litigation will be stayed by § 362." Fed. R. Bankr. P. 9027 advisory committee note. Other provisions of the Rule, such as the requirement that the notice of removal "contain a statement that the party filing the notice does or does not consent to the bankruptcy court's entry of a final judgment or order," also reflect unique bankruptcy concerns. Fed. R. Civ. P. 9027(a)(1)(B); *see also* Fed. R. Civ. P. 9027(e)(1); Fed. R. Civ. P. 9027(e)(3)(A).

Plaintiff's argument implies that this extensive effort to craft bankruptcy-specific removal procedures was a nullity from the outset, because 28 U.S.C. § 1446 already covered bankruptcy

removals and would preempt any differing procedures.  However, the better reading is that

28 U.S.C. § 1446 does not cover the timing of removals under 28 U.S.C. § 1452(a), which are

covered instead by the bankruptcy-specific provisions of Rule 9027.  *See In re Stephens*, 639

B.R. 679, 689–90 (Bankr. N.D. Tex. 2022); *Donington*, 194 B.R. at 755–56; *Pacor*, 72 B.R. at

928–29.

Initially, there are several textual indicators that 28 U.S.C. § 1446 does not cover

removals under 28 U.S.C. § 1452(a).

> Unlike § 1447, which governs the "[p]rocedure *after* removal *generally*" (emphasis
> added), § 1446 is more narrowly focused on providing a "[p]rocedure for the
> removal of *civil actions*" (emphasis added)—only the first of the two types of
> removal.  The inapplicability of § 1446 to a removal under § 1452(a) is also
> exemplified by the fact that the provisions of § 1446 do not align with all of the
> forms of removal that may be taken under § 1452(a).  For example, whereas
> § 1446(b) sets out defendant-based deadlines for removal, § 1452(a) is a removal
> provision equally available to a plaintiff.  Additionally, whereas § 1446 sets out
> procedures for a removal from state court, removals under § 1452(a) are not limited
> to state court.

*In re Stephens*, 639 B.R. at 689–90.[5]

As noted by several courts, the clearest discrepancy between Section 1452(a) and

28 U.S.C. § 1446 is that Section 1452(a) allows "a party" to remove any claim or action if the

district court has bankruptcy jurisdiction.  28 U.S.C. § 1452(a); *see Pacor*, 72 B.R. 927 at 930;

*Stephens*, 639 B.R. at 689.  But Section 1446 speaks only to defendants, requiring removal

within 30 days after the receipt of a relevant pleading or other paper "by the defendant."

28 U.S.C. § 1446(b)(1), (3).  Similarly, Section 1446 explains how "a defendant or defendants"

should file a notice of removal, but it does not give any guidance on how a plaintiff should do so.

---

[5] Though Section 1446 speaks mainly to civil actions, it does include one provision directed to a
"civil action or criminal prosecution."  *See* 28 U.S.C. § 1446(g).  However, this provision
concerns removal of actions against the United States or an officer thereof and is not probative of
the issue whether the timing provisions in Section 1446 are also intended to cover bankruptcy
removals or whether Section 1452(a) creates a separate scheme for such removals.

*Id.* § 1446(a).  Accordingly, if a plaintiff sought to exercise its right to removal under Section 1452 after the defendant filed a related bankruptcy case, the plaintiff's time to do so under 18 U.S.C. § 1446 would apparently depend on when the defendant had notice of removability.  And the plaintiff would seemingly not be required to file a notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders," given that the requirement is applicable only to defendants.  *Id*.  This makes no sense.  Congress' failure to amend Section 1446 to cover removal by plaintiffs strongly suggests that the requirements of Section 1446 were not intended to apply to removals under 28 U.S.C. § 1452(a).

The statutory history confirms this understanding.  *See Snyder v. United States*, 603 U.S. 1, 12 (2024) (relying on statutory history for statutory interpretation).  Prior to 1978, removal in bankruptcy and non-bankruptcy cases was governed by 28 U.S.C. §§ 1441–1447.  *See In re Boyer*, 108 B.R. 19, 23 (Bankr. N.D.N.Y. 1988).  "Due to limitations in the existing removal statutes incompatible with the concerns and policies of the bankruptcy laws," [t]he Bankruptcy Reform Act of 1978 enacted a bankruptcy-specific removal provision, 28 U.S.C. § 1478.  *Id.*; *see* Pub. L. No. 95–598, 92 Stat. 2549 (1978).  This provision governed removal "to the bankruptcy court."  *See* 92 Stat. at 2670.  It "set no time deadlines nor did it set forth a removal procedure." *Pacor*, 72 B.R. at 929.  Notably, however, it was understood that "the terms of § 1446 did not apply" to bankruptcy removals, "[r]ather, the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States drafted 'Suggested Interim Bankruptcy Rules' which were adopted in various districts as local rules of bankruptcy procedure."  *Pacor*, 72 B.R. at 929; *see Boyer*, 108 B.R. at 23–24.  The interim removal procedure was then supplanted by Rule 9027, which "basically tracked its interim predecessor in setting forth the removal procedure

under 28 U.S.C. § 1478." *Boyer*, 108 B.R. at 23.  "As the lengthy Advisory Committee Note to Rule 9027 makes clear, the removal procedures and time deadlines established by this rule are different from those set out in 28 U.S.C. §§ 1441, 1446." *Pacor*, 72 B.R. at 930.  If the new bankruptcy removal provision was governed by the timelines set out in 28 U.S.C. § 1446, there would have been no reason for Rule 9027 to be implemented at all.  Thus, contemporaneous understanding supports that removal under Section 1452 was intended to be governed by the rules of bankruptcy procedure, not 28 U.S.C. § 1446.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) ([I]nterpretations issued contemporaneously with the statute at issue . . . may be especially useful in determining the statute's meaning."); *Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 279 (2018).

Some courts have suggested that Rule 9027 was implicitly overruled when Congress repealed the former 28 U.S.C. § 1478 and replaced it with the current bankruptcy removal provision, 28 U.S.C. § 1452.  *See Pacor*, 72 B.R. at 930.  But there is no apparent logic to this position.  The former 28 U.S.C. § 1478 referred to removal "to the bankruptcy court." *Id*.  In 1984, Congress amended the provision to refer to the district court in response to the Supreme Court's decision in *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), which held the former provision unconstitutional.  *See Boyer*, 108 B.R. at 24.  However, in doing so Congress "expressed no desire to alter the procedure or time periods set out in Rule 9027 which were then in effect." *Pacor*, 72 B.R. at 930.  Rule 9027 was in fact amended to conform with the new bankruptcy removal provision and has been amended a number of times since, without any apparent consideration of this issue.  *See Boyer*, 108 B.R. at 24 ("The absence of any alteration to Fed. R. Bankr. P. 9027 when § 1452 was enacted and the subsequent 1987 amendments to conform to § 1452 firmly settle the former's status as the bankruptcy removal

rule and put to rest any confusion or conflict that might have existed between the statute and the rule."); *In re Aztec Indus., Inc.*, 84 B.R. 464, 469 (Bankr. N.D. Ohio 1987).  There is no indication that Congress intended at any point to disrupt the established understanding that Rule 9027, not 28 U.S.C. § 1446, governed the timing of bankruptcy removals.

Nor is there any force to the argument that Rule 9027(a)(2) applies only to removals directly to the bankruptcy court.  The bankruptcy courts are "units of the district courts."  *Boyer*, 108 B.R. at 24 (citing 28 U.S.C. § 151).  The Federal Rules of Bankruptcy Procedure do not apply only in bankruptcy court; they apply to "cases under the Bankruptcy Code, Title 11 of the United States Code," and the district courts have jurisdiction over such cases.  Fed. R. Bankr. P. 1001(a); *see* 28 U.S.C. § 1334; *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 300 n.5 (2023) ("Section 1334 grants bankruptcy jurisdiction to the district courts in the first instance, and those courts may refer such jurisdiction to bankruptcy courts under prescribed circumstances." (citation and quotation marks omitted)).[6]  Rule 9027 explicitly contemplates that it will apply to "the district court—or the bankruptcy judge to whom the bankruptcy case has been referred."  Fed. R. Bankr. P. 9027(e).  Accordingly, the fact that removal may or must in some cases be made to a district court does not alter the principle that the time limits in Rule 9027 govern removals under 28 U.S.C.A. § 1452.[7]

---

[6] Notably, the Federal Rules of Bankruptcy Procedure explicitly apply to "a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452."  Fed. R. Bankr. P. 7001(j).  Such proceedings are covered by the rules governing adversary proceedings, which largely mirror the Federal Rules of Civil Procedure.  *See* Fed. R. Bankr. P. 7001 advisory committee note.

[7] At least one court and one commentator have suggested that the Supreme Court's decision in *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128–29 (1995), implies that 28 U.S.C. § 1446 applies to bankruptcy removals and precludes conflicting provisions of Rule 9027.  *See In re Asbestos Litig.*, 2002 WL 649400, at *3; Thomas B. Bennett, *Removal, Remand, and Abstention Related to Bankruptcies: Yet Another Litigation Quagmire!*, 27 Cumb. L. Rev. 1037,

Defendant's notice of removal is timely under Rule 9027.

## II.    Subject-Matter Jurisdiction

Plaintiff argues that this case must nevertheless be remanded because the Court does not have subject matter jurisdiction. Dkt. No. 6 at 11–13. That argument is convincing.

The party seeking to remove an action from state court to federal court bears the burden of proving federal jurisdiction. *See Cal. Pub. Emps. Ret. Syst. v. WorldCom. Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *accord United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). As a general matter, "there is a presumption against removal, and uncertainties tend to weigh in favor of remand." *Harraz v. EgyptAir Airlines Co.*, 2019 WL 6700946, at *2 (S.D.N.Y. Dec. 9, 2019). "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve

---

1057–1061 (1997). However, *Things Remembered* is distinguishable. In *Things Remembered*, the Supreme Court ruled that the prohibitions on federal appellate review of district court orders of remand in 28 U.S.C. § 1447(d) apply to removals and remands under 28 U.S.C. § 1452(a). 516 U.S. at 128–29. It noted the "broad" Congressional policy of restricting appellate review of remand orders and stated that there is no "reason to infer . . . that Congress intended to exclude bankruptcy cases from its coverage." *Id.* at 127–29; *see United States v. Rice*, 327 U.S. 742, 753–53 (1946) (noting in 1946 that the "universality" of the practice of denying appellate review of remand orders requires the conclusion that Congress legislates under the assumption that the statute denying appellate review will apply). There was also no textual conflict between Section 1447(d) and any other statutory provision or bankruptcy rule. *See Things Remembered*, 516 U.S. at 128 (stating that the remand provisions in Section 1452(b) "comfortably coexist" with the requirements of Section 1447(d)). By contrast, Section 1446 is a poor textual fit with Section 1452(a) and there are numerous contextual indicators that Congress did intend to exclude bankruptcy removals from the time limits in 28 U.S.C. § 1446 due to the "unique concerns and policies embodied in the Bankruptcy Code." *Pacor*, 72 B.R. at 930. It is not inconsistent for Congress to have assumed that one general remand provision with nearly global application would apply to removals under Section 1452 and another provision which is poorly tailored to the bankruptcy context would not. Such analysis accords with the opinion of the district court in *Things Remembered* itself, which analyzed the timeliness of removal pursuant to 28 U.S.C. § 1452 under Rule 9027 while analyzing the timeliness of removal pursuant to 28 U.S.C. § 1441 under 28 U.S.C. § 1446. *See* Joint App'x, *Things Remembered v. Petrarca*, 1995 WL 17013930, at *22aa–30aa; *In re Stephens*, 639 B.R. at 688.

any doubts against removability." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d

112, 124 (2d Cir. 2007) (citation and internal quotation marks omitted).

> Section 1452(a) provides:

> A party may remove any claim or cause of action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a). Section 1334(b), in turn, provides:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). "[R]emoval jurisdiction . . . is 'determined by reference to the well-

pleaded complaint.'" *D'Alessio v. N.Y. Stock Exch. Inc.*, 258 F.3d 93, 100 (2d Cir. 2001)

(quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

The Court laid out the relevant principles in *47 E. 34th St. (NY), L.P. v. BridgeStreet*

*Worldwide, Inc.*, 2021 WL 2012296, at *3 (S.D.N.Y. May 20, 2021):

> The three types of jurisdiction that a district court may exercise pursuant to Section 1334(b) "are colloquially referred to as 'arising under,' 'arising in,' and 'related to' jurisdiction." *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 225 (S.D.N.Y. 2019) (quoting *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 161 (S.D.N.Y. 2013)). "Proceedings 'arising under' the Bankruptcy Code are those 'that clearly invoke substantive rights created by federal bankruptcy law.'" *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006)); *see also KeyBank Nat'l Ass'n*, 600 B.R. at 225 ("'Arising under' jurisdiction exists in 'any matter under which a claim is made under a provision of title 11.'") (quoting *In re Salander—O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y. 2012)). "Proceedings 'arising in' a bankruptcy case are those 'claims that are not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy.'" *In re Robert Plan Corp.*, 777 F.3d at 596–97 (quoting *Baker*, 613 F.3d at 350–51); *see also Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.") (citation omitted). Finally, "related to" jurisdiction exists if the "outcome of the proceeding could conceivably have any effect upon the debtors' estate being

administered." *In re Robert Plan Corp.*, 777 F.3d at 597 (quoting *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)); *see In re Cavalry Constr., Inc.*, 496 B.R. 106, 111 (S.D.N.Y. 2013) ("[C]ivil proceedings are 'related to cases under title 11' if the outcome of those proceedings in any way impacts upon the handling and administration of the bankrupt estate.") (internal quotation marks and citation omitted). Cases that either "arise under" or "arise in" the Bankruptcy Code are deemed "core" proceedings, while those that merely "relate to" a case under the Bankruptcy Code are "non-core" proceedings. *In re Robert Plan Corp.*, 777 F.3d at 596–97.

*47 E. 34th St.*, 2021 WL 2012296, at *3.

## A.    Core Proceeding

Defendant's Amended Notice of Removal asserts that the Court has "related to" jurisdiction. *See* Dkt. No. 12 ¶ 26. However, Defendant additionally asserts that this case is "under Title 11 of the United States Code," *id.* ¶¶ 26–27, and he argues in his memorandum that this case is a core proceeding, which is one that either "arise[s] under" or "arise[s] in" the bankruptcy code. Dkt. No. 18 at 12; *see In re Robert Plan Corp.*, 777 F.3d at 596–97. This is not a core proceeding.

Section 157(b)(2) provides a non-exclusive list of core proceedings. *See In re Iridium Operating LLC*, 285 B.R. 822, 829 (S.D.N.Y. 2002). "Proceedings that involve 'substantive rights created by federal bankruptcy law' or proceedings that 'would have no existence outside of the bankruptcy' are core proceedings." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 463 (S.D.N.Y. 2020) (quoting *In re Robert Plan Corp.*, 777 F.3d at 596–97). "[A] claim is non-core if it 'does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks bankruptcy jurisdiction.'" *Id.* (quoting *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012)). "[W]hether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *In re U.S. Lines. Inc.*, 197 F.3d 631, 637 (2d Cir. 1999). "Proceedings can be core by virtue of their

nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *Id.* (internal citations omitted).  Plaintiff's state court lawsuit is not core.

Plaintiff asserts contract rights under the Guaranty against Defendant, a non-debtor. These rights were created antecedent to the Borrowers' bankruptcy filing and find their home in the law of contract, not in the law of bankruptcy.  *See Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Cos.*, 634 B.R. 226, 235 (S.D.N.Y. 2021) ("[D]isputes relating to contracts that formed prior to the bankruptcy petition typically are non-core.").  The proceedings in state court are not in any way dependent on the Borrowers' bankruptcy proceedings.  They were commenced before the bankruptcy filing and can continue after it.  *See DeWitt Rehab.*, 464 B.R. at 591 "(A claim is non-core if it does not depend on bankruptcy laws for its existence and . . . could proceed in a court that lacks bankruptcy jurisdiction." (internal citation and quotation marks omitted)); *In re Extended Stay Inc.*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) ("[C]laims against non-debtor guarantors routinely are brought and adjudicated in state court."), *aff'd in part*, 435 B.R. 139 (S.D.N.Y. 2010).  The proceedings are not unique to bankruptcy, nor do they affect a core bankruptcy function such as "fixing the order of priority claims against a debtor, placing the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and administering all property in the bankrupt's possession." *U.S. Lines, Inc.*, 197 F.3d at 637.

Defendant argues that Plaintiff's lawsuit is "core" because it "seeks an adjustment of the debtor-creditor relationship in a significant way."  Dkt. No. 18 at 12.  But Defendant is not the debtor—Defendant is the debtors' guarantor.  Greyhawk's rights against Defendant are independent of its rights against Borrower.  A dispute between a creditor and a guarantor who

has not filed a petition for relief under the bankruptcy code does not involve the "restructuring of debtor-creditor relations," that the Supreme Court has held is "at the core of the federal bankruptcy power." *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982); *see In re Eight-115 Assocs., LLC*, 626 B.R. 383, 395 (Bankr. S.D.N.Y. 2021) ("It is very clear that this contractual claim between two non-debtor parties is non-core."). Borrowers already have obligations to Greyhawk on the Loan, and a judicial decision on Defendant's liability will not reduce those obligations. It is only if Defendant actually pays the debt that Borrowers' obligations may be reduced. A dispute between non-debtors does not affect a core bankruptcy function simply because the transaction between them may have some indirect effect on the debtor's estate. *See Mt. McKinley Ins. Co. v. Corning Inc*., 399 F.3d 436, 448–49 (2d Cir. 2005) ("[P]laintiffs here seek to adjudicate the rights of non-debtors only. Thus, the adjudication of the claims in this lawsuit will have no direct impact on PCC's bankruptcy proceedings."). Courts have held that even a dispute between a debtor itself and a creditor is not a core proceeding simply because it affects the debtor's estate. *See U.S. Lines. Inc.*, 197 F.3d at 637 ("[C]ontract claims are not rendered core simply because they involve property of the estate."). Such an approach would "create[] an exception to *Marathon* that would swallow the rule," as essentially any contract action involving a debtor in some sense effects the debtor estate. *In re Orion Pictures Corp*., 4 F.3d 1095, 1102 (2d Cir. 1993); *see Beard v. Braunstein*, 914 F.2d 434, 443 (3d Cir. 1990) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core."); *In re Balensweig*, 410 B.R. 157, 163 (Bankr. S.D.N.Y. 2008) (rejecting argument that pre-petition claim was core merely because "the possibility of recovery of funds . . . may

affect distributions"). Given that the action here does not even involve the debtor but rather the debtors' guarantor, its connection to the bankruptcy proceeding is even more tangential.[8]

Greyhawk's pre-petition contract claim against Vella on the Guaranty is not core to the bankruptcy proceedings of the Borrowers.

### B.    "Related to" Jurisdiction

Defendant also asserts that the Court has "related to" jurisdiction. NOR ¶ 19; *see also* Dkt. No. 12 ¶ 26. In his Amended Notice of Removal, Defendant states that such jurisdiction exists because of his rights to "indemnification, contribution and/or reimbursement." Dkt. No. 18 at 11. Defendant argues that "[t]o the extent Vella pays any money to Greyhawk, Vella will have a claim against the Debtors for indemnification, contribution and/or reimbursement. To the extent Vella is found liable to Greyhawk under the Guaranty, Vella will have a contingent claim against the Debtors for indemnification, contribution and/or reimbursement." *Id.*

"In this Circuit, 'a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate.'" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way

---

[8] At oral argument, Plaintiff cited to *Exyte U.S., Inc. v. Athenex, Inc.*, in which the court held that a state law contract claim against the debtor and other claims that were "inextricably intertwined" were core proceedings. 2025 WL 726628, at *5 (W.D.N.Y. Mar. 7, 2025). The critical difference in that case is that the creditor filed a claim against the bankruptcy estate which "mirror[ed] its claims in the Civil Action." *Id.* at *6. When "a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995). Here, Greyhawk did not submit to the jurisdiction of the bankruptcy court by filing a proof of claim regarding the Guaranty; rather, it was Defendant who filed the adversary complaint seeking a declaratory judgment. This does not confer jurisdiction over a claim that is not otherwise core.

impacts upon the handling and administration of the bankrupt estate." *Id.* (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)). As Judge Koeltl has noted, "[C]ourts within the Second Circuit have found that 'related to' jurisdiction exists in several circumstances":

> First, "related to" jurisdiction has been found in cases in which the cause of action will directly impact the amount of any distribution payable to creditors, as for example when the bankruptcy trustee or representative sues to recover damages on behalf of the bankruptcy estate. Second, "related to" jurisdiction has been found in cases in which the court "enjoin[s] third-party non-debtor claims that directly affect the res of the bankruptcy estate," which can cover cases where the court enjoins a creditor from suiting a third party in order to keep in place the debtor's reorganization plan. Third, jurisdiction has been found in cases in which there is a "reasonable legal basis" for a claim by a third-party defendant against the debtor for indemnification or contribution.

*Worldview Ent. Holdings Inc. v. Woodrow*, 611 B.R. 10, 16–17 (S.D.N.Y. 2019); *see Sokola v. Weinstein*, 2020 WL 3605578, at *8 (S.D.N.Y. July 2, 2020).

Viable indemnification claims against a debtor that could be brought by a non-debtor defendant can be a basis for establishing "related to" jurisdiction, even where such claims have not yet been brought. *See, e.g., In re Extended Stay Inc.*, 435 B.R. 139, 150 (S.D.N.Y. 2010) (holding that the potential for an indemnification claim by non-debtor defendant was sufficient to render action "related to" debtor's bankruptcy proceeding); *Sokola*, 2020 WL 3605578, at *9 ("There is no doubt that potential claims by a third party for indemnification against a debtor entity . . . can support the assertion of 'related to' jurisdiction over the action in which the indemnification obligation could arise.") (citation omitted). But "the mere assertion of an indemnity claim against a debtor, no matter how baseless, cannot trigger bankruptcy jurisdiction." *In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y. 1997). Thus, "[i]n determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to 'related to' jurisdiction over litigation to which the debtor is not a party, courts in this circuit . . . have generally found jurisdiction where there is a

'reasonable' legal basis for the claim." *SPV Osus*, 882 F.3d at 340 (quoting *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 319 (S.D.N.Y. 2003) (collecting cases)).  Where there is a reasonable legal basis for such a claim, "the removed action could have a 'conceivable effect' on 'the debtor's rights, liabilities, options or freedom of action' and could 'impact[ ] upon the handling and administration of the bankrupt estate.'" *Sokola*, 2020 WL 3605578, at *9 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)); *see 47 E. 34th St.*, 2021 WL 2012296, at *7.

Defendant has no reasonable legal basis for indemnification, contribution, and/or reimbursement against Borrowers because he expressly waived any such claim under the terms of the Guaranty.  Dkt. No. 6 at 13.  Section 5.2(c)(xvi) of the Guaranty states that Guarantor "[w]aives all rights of subrogation, indemnity, any rights to collect reimbursement from Borrower and any right to enforce any remedy that Lender now has, or may have, against Borrower."  Guaranty § 5.2(c)(xvi).  This provision is clear, and Defendant does not dispute its application or respond to Plaintiff's argument in any way.  *See* Dkt. No. 18 at 10–11.  Thus, Defendant's potential claim for indemnification is baseless and cannot support "related to" jurisdiction.  *See Sokola*, 2020 WL 3605578, at *9–11; *In re Chateaugay*, 213 B.R. at 640; *Worldview Ent. Holdings*, 611 B.R. at 17.

Defendant also appears to argue that the Court has "related to" jurisdiction because of the possibility of inconsistent rulings between the New York State Court and the Bankruptcy Court in the Central District of California.  Dkt. No. 18 at 11–12.  At oral argument, Defendant emphasized that the proceedings in New York state court could affect the bankruptcy proceedings via collateral estoppel.  *See Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) ("It is well settled that preclusion principles apply in bankruptcy proceedings."); *In re Shiver*, 396 B.R.

110, 118–125 (Bankr. S.D.N.Y. 2008).  Vella suggested that a ruling by the state court on

Vella's liability under the Guaranty could have preclusive effect on that issue against Greyhawk

or Vella.  But this is irrelevant absent a showing that Vella's liability on the Guaranty would

"alter the debtor's rights, liabilities, options, or freedom of action (either positively or

negatively)."  *SPV Osus*, 882 F.3d at 340 (quoting *Celotex*, 514 U.S. at 308 n.6).  Vella and

Greyhawk are not Debtors, and decision of an issue between them cannot be "related to" the

bankruptcy unless it has some effect on the Debtors.  Here, the Debtors' rights and liabilities

under the Loan are independent from Vella's rights and liabilities under the Guaranty.  The

Debtors have an absolute and independent liability on the Loan regardless of Vella's liability on

the Guaranty.  As stated above, Vella has waived his right to seek contribution or reimbursement

for any payments under the Guaranty.  Jurisdiction does not exist simply because a claim by a

non-debtor shares relevant factual background with claims by a debtor.  *See In re Johns-Manville

Corp.*, 517 F.3d 52 (2d Cir. 2008) ("[T]he fact that [the claim] arises from a common nucleus of

operative facts . . . is of little significance from a jurisdictional standpoint."); *Worldview Ent.

Holdings Inc. v. Woodrow*, 611 B.R. 10, 17 (S.D.N.Y. 2019)

Vella has not provided a "reasonable legal basis" to believe that any determination by the

state court would, through collateral estoppel, affect the more relevant issue of the Debtors'

liability on the Loan.  *Id.* at 340.  The Debtors are not a party to the state court proceeding.  The

proceeding concerns Vella's liability under the Guaranty, not the Debtors' liability under the

Loan.  The Guaranty is specifically written to be separate from the Loan, and does not depend on

"the validity, regularity or enforceability of the Note, the Loan Agreement, the Security

Instrument, or the other Loan documents."  Guaranty § 1.2; *see id.* §§ 1.7, 1.9, 1.11, 5.2(c)(xxiv).

Accordingly, there is no reasonable legal basis to presume that a decision by the state court in

this case, even on the issue of usury, would affect the Debtors' ability to litigate any of its defenses to the Loan in the bankruptcy court. *See In re Extended Stay Inc.*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009), *aff'd in part*, 435 B.R. 139 (S.D.N.Y. 2010) ("Given the language of the Guaranty Agreements that insulates the Debtors from harm relating to the potential liability of the Guarantors, the state law action has no foreseeable connection to the Debtors."); *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011) ("[T]oo many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction.").

Defendant has not established "related to" jurisdiction. Because Defendant has not established that this court has any form of jurisdiction, the case must be remanded. However, even assuming this Court did have "related to" jurisdiction, remand would be required for multiple reasons.

## III.  Forum Selection Clause

First, this case must be remanded even if "related to" jurisdiction exists because Defendant waived its right to remove this case in Section 4.9(b) of the Guaranty. As relevant here, Section 4.9(b) requires any legal suit against the Guarantor and arising out of the Guaranty may, at Lender's option, be instituted in any federal or state court in the City of New York, and that Guarantor waives any objections based on venue or forum non conveniens and irrevocably submits to the jurisdiction of any such court. Guaranty § 4.9(b).

The Second Circuit has held that a mandatory forum selection clause requiring that disputes be resolved in state court precludes a party to that clause from removing the case to federal court on the basis of diversity of citizenship. *See Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) ("Parties are free to bind themselves to forum selection clauses that trump what would otherwise be a right to remove cases to federal courts."). Here, the forum selection clause

does not specify that suit must be brought in state court.  It allows the Lender to bring suit in either state or federal court.  *See* Guaranty § 4.9(b).  However, the Second Circuit has held that when a contract contains a provision that the plaintiff may choose the designated forum and a waiver of any claims of forum non conveniens, "[t]he combination of these clauses amounts to a mandatory forum selection clause, at least where the plaintiff chooses the designated forum." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009); *see AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 402 (S.D.N.Y. 2000) ("AGR is not compelled to bring suit in either forum but once it chooses to do so, its decision is binding."); *City of New York v. Pullman Inc.*, 477 F. Supp. 438, 442 n.11 (S.D.N.Y. 1979) (Weinfeld, J.) ("An agreement [c]onferring jurisdiction in one forum will not be interpreted as [e]xcluding jurisdiction elsewhere unless it . . . leaves it in the control of one party with power to force on its own terms the appropriate forum.").  The Guaranty states that the Guarantor waives objections based on venue or forum non conveniens and irrevocably submits to the jurisdiction of the court the Lender chooses.  Guaranty § 4.9(b).  This manifests the intent of the parties that once the Lender chooses a New York state or federal court, that decision will be binding on the Guarantor.  *See ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 253 (S.D.N.Y. 2017) ("Because Plaintiff laid venue in one of the two alternative fora designated in the clauses, those clauses have now become mandatory."); *Trump v. Deutsche Bank Tr. Co. Americas*, 887 N.Y.S.2d 121, 124 (2d Dep't 2009).  It would be inconsistent with this intent to allow the Guarantor to remove the case and transfer it to another forum, as he attempts to do here, after the Lender has made his choice of New York state court.

Defendant does not dispute this analysis.  *See* Dkt. No. 18 at 5–6.  Rather, he argues that "forum selection clauses are generally not enforceable in a core proceeding because public

policy strongly favors hearing all core proceedings in the bankruptcy court." *Id.* at 6.  However, as already discussed above, this case is not a core proceeding.  Non-core bankruptcy cases need not be heard in bankruptcy court.  *See ICICI Bank*, 565 B.R. at 248–49; *U.S. Lines*, 197 F.3d at 640.  They may generally be compelled to arbitration.  *See U.S. Lines*, 197 F.3d at 640 ("[N]on-core proceedings . . . are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration.").  If a court will honor the parties' agreement to resolve a non-core dispute through arbitration, it should similarly honor the parties' agreement to resolve the same dispute in state court.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause.").  Accordingly, even if the "remote relationship" of this case to a bankruptcy proceeding were "sufficient to support 'related-to' jurisdiction," the forum-selection clause would require remand.  *ICICI Bank*, 565 B.R. at 253–55.

## IV.  Abstention

In a final alternative, remand is also required due to mandatory or permissive abstention.

Although 28 U.S.C. § 1334 "grants district courts jurisdiction over . . . bankruptcy proceedings, it also permits courts to abstain in the interests of justice or comity." *Joseph & Kirschenbaum LLP v. Tenenbaum*, 2020 WL 242374, at *3 (S.D.N.Y. Jan. 16, 2020); *see* 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.").  District courts may also "remand such claim or cause of action on any equitable ground" pursuant to 28 U.S.C. § 1452(b).  *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 226 (S.D.N.Y. 2019); *see In re Cathedral of the Incarnation in the Diocese of Long Island*, 99

F.3d 66, 69 (2d Cir. 1996) (Section "1452(b)'s reference to an 'equitable ground' means one that is fair and reasonable, rather than one that originated in the chancery courts or is discretionary").

Section 1334(c) (2) provides, in relevant part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall abstain* from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

A party seeking mandatory abstention under § 1334(c)(2) thus must demonstrate that: "(1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; [and] (6) that action can be 'timely adjudicated' in state court." *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512 (S.D.N.Y. 2015); *Trs. of Masonic Hall & Asylum Fund v. Pricewaterhousecoopers LLP*, 2009 WL 290543, at *4 (S.D.N.Y. Feb. 6, 2009) (Lynch, J.) (quoting *In re WorldCom*, 293 B.R. at 331). However, "[a] party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *In re WorldCom*, 293 B.R. at 331; *see Mt. McKinley Ins.,* 399 F.3d at 446–47.

In determining whether to exercise permissive abstention under Section 1334(c), courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core"

> proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*KeyBank Nat'l Ass'n*, 600 B.R. at 225–26 (quoting *Lothian Cassidy*, 487 B.R. at 165); *see 47 E. 34th St.*, 2021 WL 2012296, at \*9; *Sokola*, 2020 WL 3605578, at \*16–17.

Plaintiff argues that all five factors for mandatory abstention are satisfied here. The motion for abstention was timely, its action asserts only state law claims, the action does not "arise under" or "arise in" a bankruptcy case, Section 1334 is the sole asserted basis for federal jurisdiction, the action was commenced in state court, and the action can be timely adjudicated in state court. Dkt. No. 6 at 13-16. Defendant does not dispute four of the five factors. He responds that mandatory abstention is not appropriate here because Plaintiff's state court action may appropriately be characterized as a core proceeding, "as it seeks an adjustment of the debtor-creditor relationship in a significant way." Dkt. No. 18 at 14. But again, this case is not a core proceeding. Plaintiff timely moved for abstention within weeks of removal, *see* Dkt. No. 8, the action was commenced in state court based on a state law contract claim, the basis for federal jurisdiction is Section 1334, and there is no reason the action cannot be timely adjudicated in state court. Therefore, even if the Court had "related to" jurisdiction, it would remand on the basis of mandatory abstention.[9]

---

[9] If mandatory abstention were inapplicable, the Court would also grant permissive abstention. The case does not involve the debtor and sounds entirely in state law. More importantly, Defendant's attempt to remove and transfer this case despite his agreement to a Guaranty closely tying him to Greyhawk's choice of forum strongly suggests forum-shopping.

V.    **Attorney's Fees**

Section 1447(c) provides: "An order remanding the case may require payment of just costs and actual expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  "The appropriate test for awarding fees under 1447(c) should recognize the desire to deter removals sought for purposes of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005).  "Absent unusual circumstances, courts may award attorney's fees under 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

The evidence suggests that Defendant sought removal here "for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 140.  After Debtors defaulted on the loan, Defendant was left with a Guaranty in which he had waived most of his relevant legal rights and a stated amount due of $47,558,932.40.  *See* Dkt. No. 1 ¶¶ 34–35.  Plaintiff commenced an action against Defendant in state court on the Guaranty.  Dkt. No. 12 ¶ 10.  The day before Plaintiff foreclosed on the subject property, and the day after a California court rejected Borrowers' argument that the Loan was usurious, Borrowers filed for bankruptcy, staying foreclosure.  Dkt. No. 1 ¶¶ 3–7; Dkt. No. 19-1 at 4–5.  Although Defendant was well aware of the bankruptcy proceeding and all relevant usury arguments at that time, he waited to file the adversary complaint for almost two months, until shortly before the anticipated decision of the Plaintiff's motion in state court.  Dkt. No. 1 ¶¶ 14–17.  The filing of the adversary complaint at that juncture, followed by a notice of removal the very next day, bespeaks a transparent effort to manufacture a basis for removal.  Defendant's original notice of removal relied on the frivolous premise that the adversary complaint unilaterally reset the removal clock under 28 U.S.C. § 1446.  Dkt. No. 1 ¶ 19.  Although Defendant properly moved based on Rule 9027 in the Amended Notice of Removal, Defendant's arguments that this is a core proceeding

remain entirely without basis.  Defendant's apparent strategy of multiplying motions and proceedings before grasping at arguments to justify them provides reason to believe that Defendant sought "to abuse or harass plaintiff, or to force plaintiff to incur unnecessar[y] expenses." *Koninklijke Phillips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 335 (S.D.N.Y. 2005) (quoting *Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, 2004 WL 1574732, at *4 (S.D.N.Y. July 13, 2004)).  Moreover, Defendant's arguments for removal "were frivolous and lacked color." *Qatar v. First Abu Dhabi Bank PJSC*, 2020 WL 206661, at *13 (S.D.N.Y. Jan. 14, 2020).  The Court will award Plaintiff attorney's fees and costs.

## CONCLUSION

Plaintiff's motion to remand is GRANTED.  Defendant's motion for transfer is DENIED.

Plaintiff is awarded attorney's fees and costs for bringing the motion to remand.  Plaintiff shall submit proof of fees and costs by one week from the date of this Order.  Defendant shall have one week to respond.  Plaintiff then shall have two days to reply.

The Clerk of Court is respectfully directed to close Dkt. Nos. 4 and 5.

SO ORDERED.

Dated: June 23, 2025
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge